N8BCrecC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        16 Cr. 389 (KPF)

JONA RECHNITZ,

                 Defendant.

------------------------------x
                                       New York, N.Y.
                                       August 11, 2023
                                       11:30 a.m.


Before:

              HON. KATHERINE POLK FAILLA,

                                       District Judge

                       APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  JARROD L. SCHAEFFER
     Assistant United States Attorney

SHER TREMONTE
     Attorneys for Defendant
BY:  NOAM K. BIALE

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
     Attorneys for Interested Party New York City Correction
     Officers' Benevolent Association
BY:  CHRISTOPHER J. GUNTHER
```

1                    (Case called)

2               MR. SCHAEFFER:  Good morning, your Honor.  Jarrod
3      Schaeffer for the government.

4               THE COURT:  Sir, good morning, and thank you very
5      much.

6               Sir.

7               MR. GUNTHER:  Good morning, your Honor.  Christopher
8      Gunther on behalf of COBA.

9               THE COURT:  Sir, do you contemplate speaking today
10     substantively or only as directed?

11              MR. GUNTHER:  I think only as directed, your Honor.

12              THE COURT:  Thank you, sir.

13              MR. GUNTHER:  Thank you.

14              MR. BIALE:  Good morning, your Honor.  Noam Biale on
15     behalf of Jona Rechnitz, and my client is present on the phone
16     line.

17              THE COURT:  Sir, thank you very much.

18              Mr. Rechnitz, this is Judge Failla.  Are you able to
19     hear me, sir, this morning?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Good morning, sir.  Thank you.

22              Mr. Biale, have you had an opportunity to speak with
23     your client about his right to be here in person for this
24     conference and his ability to waive that right?

25              MR. BIALE:  Yes, I have, your Honor.  He waives his

1    right to be here in person and is comfortable proceeding on the
2    phone for purposes of this proceeding.
3             THE COURT:  Thank you.
4             May I simply confirm that with your client?
5             MR. BIALE:  Of course, your Honor.
6             THE COURT:  Thank you.
7             Mr. Rechnitz, I hope you were able to hear me speak
8    with Mr. Biale a moment ago.  You have the right to be here in
9    person for this conference, but given the nature of this
10   conference, you also have the ability to waive that right.  I'm
11   advised by your attorney that you are waiving your right to
12   in-person appearance and agreeing to participate by telephone
13   today; is that correct, sir?
14            THE DEFENDANT:  Yes, your Honor.
15            THE COURT:  Alright.  Thank you for that, as well.
16            Mr. Schaeffer, this case has been reassigned to me.
17   In preparation or in connection with that reassignment, I did
18   read the Second Circuit decision that I think suggested --
19   well, that resulted in the reassignment.  It was very
20   interesting.  Before I started getting into the parties'
21   submissions in this case, I wanted to be sure that I, myself,
22   was not conflicted.  I don't know, sir, when the investigation
23   began.  I saw that the conduct to which Mr. Rechnitz admitted
24   goes back some years.  As the parties may be aware, I was at
25   the U.S. Attorney's Office in the position of appeals chief

1  until March of 2013 when I was appointed to the bench.  If the
2  investigation extended as far back as 2013, although the
3  indictment is 2016, there is a possibility that I could have
4  been consulted.  I will tell the parties I have no independent
5  memory of being consulted in any way on this case, I have no
6  memory of the case, but I wanted to check with you,
7  Mr. Schaeffer, if you had any insight into that because,
8  certainly, given the genesis of the reassignment, I would hate
9  to have another situation where there was a conflict.
10           MR. SCHAEFFER:  Certainly, your Honor.  I have no
11 information to suggest that the Court had any role in this
12 case.  I can represent that Mr. Rechnitz's cooperation in this
13 case began in 2016, which is about three years after your Honor
14 took the bench.  I don't know necessarily when the
15 investigation began, but I can confer with my supervisors in
16 the U.S. Attorney's Office and submit a letter to the Court if
17 it seems there might have been a consultation prior to your
18 Honor leaving the office, but I'm not aware of one at this
19 time.
20           THE COURT:  I appreciate that.
21           Mr. Biale, is that acceptable to the defense?
22           MR. BIALE:  That's fine, your Honor.
23           THE COURT:  Mr. Biale were you involved at the
24 beginning of this, sir?
25           MR. BIALE:  I was not.  Certainly before, I was not

1  involved when Mr. Rechnitz first came in and met with the
2  U.S. Attorney's Office and, obviously, I have no knowledge of
3  what the investigation was prior to that point.  So I don't
4  have any relevant information for your Honor.
5          THE COURT:  Much appreciated, sir.
6          Just, before you sit down, approximately when was your
7  law firm retained to represent Mr. Rechnitz and was the Cooley
8  firm involved initially or were you working together with them?
9          MR. BIALE:  So we came in to represent Mr. Rechnitz in
10 November of 2020, Cooley was no longer representing him at that
11 point, but represented him through sentencing, which occurred
12 in December 2019.
13         THE COURT:  Thank you very much.
14          and Mr. Gunther, I'm not sure you wish to be heard on
15 this, sir, if you have insight into my possible involvement in
16 this case, I'd hear from you, but I don't know that you do.
17         MR. GUNTHER:  I do not, your Honor.
18         THE COURT:  Thank you, sir.
19         Mr. Schaeffer, assuming, as I currently do, that I
20 have had no involvement in this case and can keep this case,
21 have you spoken with the attorneys here today about next steps
22 in the case, for example, is there a wish on behalf of any
23 party to be heard in a supplemental sentencing submission that
24 perhaps addresses issues raised by the Second Circuit's
25 decision or other issues that may have come up at the

sentencing proceeding that people maybe didn't think about at the time or do folks just want a resentencing with no additional submissions?

MR. SCHAEFFER:  Thank you, your Honor.

I have discussed with the defense, and my understanding is that the defense would like the opportunity at least to put in a supplemental submission addressing what may have occurred since that sentencing and the current time, many developments in the case since then that the Court should consider in resentencing Mr. Rechnitz.  There may be other issues that the defense would like to address.  So I think supplemental submissions may be appropriate.

In terms of timing, we discussed potentially a mid October date during the week of October 16th, and that is in part because one of the prosecutors who was involved in this case during the prosecution is on leave, but will be able to return around that time to be present for sentencing.

There is one open issue in terms of sentencing that may be relevant, which is the matter of restitution.  The government previously took no position in the district court and did defend the restitution order in the Second Circuit.

THE COURT:  Yes.

MR. SCHAEFFER:  Unfortunately, I can't convey the government's position at this stage with respect to sentencing, but after conferring further with my supervisors, we can inform

the Court and the parties what position we intend to take here, whether it's that we would take the same lack of position or whether we would present some of the arguments that were presented at the Second Circuit.

THE COURT: Oh, I'm sure I need to hear that again, sir. Let me just review that.

Do I understand you — and please, this is also a consequence of a little bit of ignorance on my part because I've refrained from delving into the sentencing submissions pending confirmation of the lack of conflict — that if I were to do so, I would know that you did not take a position with respect to restitution at sentencing, sir?

MR. SCHAEFFER: In the district court, correct.

THE COURT: In the district court. And defended what the district court did at the Second Circuit level?

MR. SCHAEFFER: That's correct, your Honor.

THE COURT: I see. And now are not sure.

By the way, I'm not saying this either to be obtuse or to be especially persnickety this morning, but is there a reason why your position would change?

MR. SCHAEFFER: So I think it comes from the tension between the fact that what the government typically does in a cooperation setting and the fact that we took no position below before. The government's position to the Second Circuit was that what the sentencing judge had decided to do with respect

1    to restitution was appropriate and permissible.  I think the
2    question of whether the government will affirmatively take a
3    specific position with respect to restitution beyond saying
4    that the judge had the power to do what he did last time is a
5    slightly different question, which, unfortunately, the office
6    has not decided its position yet.  I will convey to the Court
7    as soon as it has.
8             THE COURT:  Thank you.
9             And when you were speaking about mid October, sir, was
10   it your contemplation that that would be the time of the
11   resentencing or the time of the submissions in connection with?
12            MR. SCHAEFFER:  I think the discussions that I had
13   with defense counsel were that the sentencing would take place
14   during mid October, and so submissions would predate that.  If
15   that works for the Court, my understanding is that defense
16   counsel would appreciate one of the prosecutors who
17   participated in Mr. Rechnitz' cooperation being present, but
18   that defense is interested in relatively quick resentencing
19   proceeding.
20            THE COURT:  Mr. Biale, do you want to cosign that or
21   disagree with that, sir?
22            MR. BIALE:  I'd like to speak for myself a little bit,
23   if I may.
24            So we did have conversations.
25            Let me just back up a little bit.

1          I know the Court is just getting familiar with the
2     case.  As your Honor probably knows, as we just discussed,
3     Mr. Rechnitz began cooperating with the government and pled
4     guilty in June of 2016, the sentencing in the matter before the
5     prior district judge occurred in December 2019.  So we are very
6     far away from his guilty plea and quite far away from the
7     original sentencing.  Mr. Rechnitz has had this hanging over
8     his head for seven years now.  He very much wants closure and
9     wants to know how this case is going to resolve.
10         So when I had spoken to the government and to
11    Mr. Gunther previously, I said that we would likely wish to
12    have sentencing as soon as 30 days from now, the week of
13    September 11th.
14         THE COURT:  Where I begin a six-week trial.
15         MR. BIALE:  Well, that maybe solves that problem.
16    Although, it sounds like if it's a six-week trial, it may spill
17    into mid October, as well.
18         Just to clarify with respect to the supplemental
19    submission, the sentencing submissions in this case were very
20    voluminous and there was a lengthy 5K motion and sentencing
21    submission from the government.  There's also a very fulsome
22    and detailed sentencing submission that Cooley submitted to the
23    Court on behalf of Mr. Rechnitz.  I do not anticipate
24    submitting a supplemental sentencing submission that would be
25    of any significant volume.  I think what I was contemplating

was a letter probably not to exceed three pages that just gave the Court an update on what Mr. Rechnitz has been up to since sentencing, and it's possible that we would want to append to that one or two additional letters of support that were not available at the time of sentencing.  But I think what I'm contemplating is something quite minimal.  We could submit it within a week or two weeks.  It won't require a lot of time.  Obviously, we defer to the Court's schedule.  It's not so important to us to have the AUSA who was involved in the investigation present.  I think Mr. Schaeffer, especially armed with the government's extremely detailed sentencing submission, can fully present the government's perspective.

So I would simply say, deferring to the Court's schedule and whatever is convenient for your Honor, we would like to have the sentencing resolved sooner rather than later.

THE COURT:  Of course.  That all said, you can imagine that I want to take an appropriate amount of time to review these voluminous sentencing submissions, which will take a little bit longer insofar as I was not involved at the ground level of any of the prior proceedings.  I appreciate the manner in which you're willing to streamline things, and I do understand that.

I guess, for me, and again, this is based on the decision that I read from the Second Circuit, there are certainly issues about the nonmonetary components of the

1  sentence imposed, but it seemed to me a lot of the concern, a
2  lot of the ink was spilled with respect to discussing
3  restitution.
4       Mr. Biale, are you simply going to be relying on
5  Cooley's restitution analysis, because I actually thought you
6  would want the opportunity to speak to what the Second Circuit
7  and what Judge Hellerstein did after these submissions were put
8  in and what the Second Circuit did after the case went up on
9  appeal.
10      MR. BIALE:  So, your Honor, I think that with respect
11 to the legal question about restitution, which is covered --
12 the issue was explained in the Second Circuit's opinion, but,
13 of course, the Second Circuit did not reach that issue because
14 they sent it back to you with the full plea.  I think that my
15 best effort on that legal argument probably is contained in my
16 Second Circuit brief, so I think I would probably refer the
17 Court to that and to Cooley's initial submission.
18      I'm of course happy to present the arguments anew to
19 your Honor.  I'm not sure I have any fresh insights.  And I
20 don't think -- I will look back at the circuit's decision.  I
21 don't think that anything that occurred with regard to
22 Judge Hellerstein's decision on that issue post-sentencing
23 really should affect the question.  I think the question was
24 teed up to Judge Hellerstein at the time of sentencing.  We
25 appealed his decision on that issue.  I think that the

1  arguments are fully set forth in the appellate brief.

2  THE COURT:  Yes.  So now, sir, in addition to asking
3  me to review the prior sentencing submissions, you also want me
4  to review the appellate record?  Yes.

5  MR. BIALE:  Okay --

6  THE COURT:  I'm just saying, if you're telling me you
7  can be ready, you can submit something in one to two weeks, but
8  you're asking me to review months and months worth of papers,
9  which I will, but I just want to know what it is the parties
10 think I need to see.

11 MR. BIALE:  I do think it would be useful to review
12 the briefing in the Second Circuit on the restitution issue.  I
13 know your Honor is very efficient.  If we had to do it in
14 30 days, we probably could, but I'm fine to wait longer if that
15 makes sense.

16 THE COURT:  Appreciated, sir.

17 Other things I should know from your perspective,
18 Mr. Biale.

19 MR. BIALE:  I don't think so, your Honor.  It sounds
20 like what we're looking at would be a date after your trial
21 that begins September 11th.

22 THE COURT:  There is a possibility that six weeks
23 could be less than six weeks depending on the composition of
24 the back table at that trial, I will have a better sense of
25 that, but I think we're probably looking for something in mid

1  October.

2  MR. BIALE: That's fine. My only other scheduling
3  issue was I wanted to make sure that if we were going past mid
4  September, that we deferred until after the Jewish holidays,
5  but I think those are over by mid October, so we should be
6  fine. Everything will coincide with the trial, it sounds like.

7  THE COURT: One moment, please.

8  (Pause)

9  We seem to be fine after the 8th of October.

10  Mr. Gunther, do you want to be heard on this issue,
11  sir, for example, I believe you're here representing a victim
12  in this case or a party entitled to restitution?

13  MR. GUNTHER: Yes.

14  THE COURT: Is it your view, sir, that your prior
15  submissions allow me to understand fully the arguments or do
16  you believe you need something else in light of the circuit's
17  decision?

18  MR. GUNTHER: My suggestion, your Honor, I think
19  there's a lot to wade through, both through the district court
20  and the prior appeal. My suggestion would be that we tee that
21  up for your Honor in a filing that just tells your Honor what
22  the issues are that remain and give you one document to read
23  rather than to be scouring the record of how this unfolded.

24  THE COURT: I don't mind reviewing the contemporaneous
25  sentencing submissions and I don't mind getting the appellate

briefs. I'm not rejecting your argument, I just want to make sure I understand what it is.

You're saying what you think the parties should do or perhaps I should order them to do is to review everything and see, in light of the Second Circuit's decision in remand, what actually remains?

MR. GUNTHER: That would be my suggestion, because I think, your Honor, there's probably two, three issues that we can tee up for your Honor that will crystalize the issues. I think there's an ability to pay issue that is very significant. Judge Hellerstein had ordered the $12 million, roughly, to be paid immediately and I think there's -- that that's an important issue that's -- it's in the prior filings to a degree, but I think it could be brought to your Honor's attention in a just more crystalized way to tee up and, frankly, to hear what the current position is from Mr. Rechnitz on that would be helpful, as well. He did not appeal on that issue. Judge Hellerstein found that he had an ability to make immediate repayment and many issues were raised on appeal, but that issue was not, that finding was not challenged on appeal. So I think it would be useful if the parties addressed these things in filings now so that your Honor knows what's still in play and focuses the attention on the issues that require your Honor's attention.

THE COURT: Are there other issues that come to mind,

1   sir, from your perspective that are open?

2         MR. GUNTHER:  The two issues that come to mind are,
3   one, his ability to pay.  The other is whether the full
4   $12 million of unpaid restitution is owable by this defendant.
5   Judge Hellerstein said it was.  Mr. Rechnitz's position has
6   been he did not proximately cause the loss and the amount of
7   restitution should be limited to about a $1.5 million of fees
8   that Platinum Partners earned in connection with the placement
9   of this investment.

10        THE COURT:  Thank you.  And I appreciate what you've
11  said.

12        Mr. Schaeffer, I think I agree, at least in part, I
13  will tell the parties, I have no problem reading these
14  materials.  I think I do want someone to tell me what the
15  issues are.  So perhaps, Mr. Schaeffer, you're going to owe me
16  a supplemental submission anyway because you need to tell me
17  your office's position on these restitution issues and what you
18  think the open issues are for sentencing.

19        Do you agree with that, sir?

20        MR. SCHAEFFER:  I do, your Honor.

21        And I apologize for misunderstanding the defense's
22  preference for the other prosecutor.  We're happy to work on
23  whatever schedule.  I must have misunderstood.

24        THE COURT:  I did not think you were misstating things
25  to me, so I do understand that.

             Ms. Noriega, may I have a date, perhaps the fifth week
of the trial.  Hopefully it will end on the fourth week as
currently scheduled.

             THE DEPUTY CLERK:  October 10th at 2:30 p.m.

             MR. BIALE:  So I may be in California for a hearing on
the 10th and the 11th, so if we could go either to the end of
that week or the beginning of the next week, I would appreciate
it.

             THE DEPUTY CLERK:  October 17th at 2:30 p.m.

             MR. BIALE:  Let me just make sure that works for my
client.

             Let me just say, I didn't mean to suggest that my
position was misrepresented in any way.  I think I didn't make
it clear to the government exactly what my position on that
was.

             THE COURT:  Sir, actually, that's not the issue.  My
bigger issue now is that I feel like you're hijacking my entire
calendar for your schedule.  So please tell me that you and
your client are available on the 17th.

             MR. BIALE:  I think that should be fine.  I'm asking
him to just confirm.

             THE COURT:  Okay.  Mr. Gunther, works for you, sir?

             MR. GUNTHER:  It does.  Thank you, your Honor.

             THE COURT:  Mr. Schaeffer, it works for you?

             MR. SCHAEFFER:  Yes, your Honor.

N8BCrecC

|   |   |
|---|---|
| 1 | THE COURT:  Counsel, is it asking too much for me to |
| 2 | ask for your submissions, whatever they are, in the month of |
| 3 | September?  I need them by the end of the month, from my |
| 4 | perspective.  I will be reading things in the month of |
| 5 | September.  I think I will be thinking about things more in the |
| 6 | beginning of October.  So may I have your final words on the |
| 7 | issue by the end of September? |
| 8 | MR. SCHAEFFER:  Yes, your Honor. |
| 9 | MR. GUNTHER:  Yes, your Honor. |
| 10 | MR. BIALE:  That's fine, your Honor. |
| 11 | And the 17th is fine for us. |
| 12 | THE COURT:  Thank you, sir. |
| 13 | So September 29th is the last Friday of the month. |
| 14 | I'd like your submissions on or before that date, and on the |
| 15 | off-chance that something that one of your colleagues says |
| 16 | sparks their recognition that you have to answer it, if there |
| 17 | needs to be a response, I'm really not asking for one, it |
| 18 | should be within a week because I do want time to sit with your |
| 19 | submissions.  So let us do that. |
| 20 | Mr. Schaeffer, other things I should know, sir? |
| 21 | MR. SCHAEFFER:  Nothing from the government's |
| 22 | perspective, your Honor. |
| 23 | THE COURT:  Thank you very much. |
| 24 | Mr. Gunther, anything else from your perspective, sir? |
| 25 | MR. GUNTHER:  No, your Honor.  Thank you. |

N8BCrecC

1           THE COURT:  Of course, sir.

2           Mr. Biale.

3           MR. BIALE:  Nothing from the defense, your Honor.

4           THE COURT:  I look forward to everyone's submissions

5 on or before the 29th of September and I will see you on the

6 17th of October.  Thank you very much for coming in today.

7           Mr. Schaeffer, please tell me if I have a conflict

8 because, right now, we're all proceeding under the assumption

9 that I do not.

10           MR. SCHAEFFER:  I will, your Honor.  Thank you.

11           THE COURT:  Thanks very much, everyone.

12                               * * *